IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| AEROSPACE PRODUCTS INTERNATIONAL, INC. | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. <u>06-2771</u>-P<br>) |
| FWF, Inc. and<br>DONALD N. TARANTO, | )<br>)<br>) |
| Defendants. | ) |

_____

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DONALD N.
TARANTO'S MOTION FOR SUMMARY JUDGMENT**
_____

Before the court is a Motion for Summary Judgment filed by defendant Donald N. Taranto.[1] (D.E. 61.) Plaintiff Aerospace Products International, Inc. ("API") filed a response in opposition to Taranto's motion. (D.E. 62-64.) For the reasons below, the motion for summary judgment is GRANTED in part and DENIED in part.

**I. BACKGROUND**

**A. Background Facts**

API is a distributor of aerospace parts located in Memphis, Tennessee. Defendant FWF, Inc. ("FWF"), at all times relevant, was in the business of aircraft repair and overhaul and was located in

_____

[1]On April 13, 2007, the parties executed a form consenting to trial and entry of final judgment by a Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Colorado. (Taranto Statement of Undisputed Facts ("SUF") ¶ 1.) Defendant Taranto is a resident of Colorado and at all times relevant owned 100% of FWF.[2] (Taranto SUF ¶ 2.) Andrew Chumney acted as FWF's Manager and Chief Executive Officer, operated FWF on a day-to-day basis, handled all of FWF's business transactions, and was viewed by API as the CEO of FWF.[3] (Taranto SUF ¶¶ 4,6.)

On or about March 4, 2004, FWF executed a credit application with API for the purchase of aircraft-related materials on credit and that, under the terms of the application, API provided those materials to FWF (but not to Taranto individually). (Taranto SUF ¶ 6.) The negotiations were conducted on behalf of API by William Clayton, API's Credit Manager. (Taranto SUF ¶ 5.) At some later time, API informed Chumney that API would no longer continue to sell materials to FWF on credit unless Taranto signed an agreement to personally guarantee the credit extended to FWF. Although no one from API ever communicated directly with Taranto regarding the need for him to execute a personal guaranty, Taranto and Chumney discussed API's requirement of a guaranty and both received

---

[2]It is undisputed that Taranto acquired 100% ownership of FWF on January 1, 2004. (Taranto SUF ¶ 2.)

[3]The parties dispute the role that Taranto played in the management of FWF. Taranto contends that he did not participate in the management of FWF and was not involved in day-to-day decisions. (Taranto SUF ¶ 3; Taranto Dep. 28:9-22). API states, however, that Taranto and Chumney had many extensive conversations relating to the business and that Chumney stated he and Taranto ran the company together. (API Resp. to Taranto SUF ¶ 3; Chumney Dep. 43:5-18; 69:4-13; 69:20-22; 70:8-15; 22:6-8.)

unexecuted copies of the guaranty to review. (Taranto Dep. 67:6-20; 68:2-16; Chumney 88:18-20; 90:3-6.) In addition, Taranto and Chumney both testified that Taranto regularly met with Chumney to discuss FWF operations, including API's requirement of a personal guaranty from Taranto to extend FWF's line of credit. (Taranto Dep. 59:12-17, 66:21, 67:6-20.) However, according to Taranto's testimony, he refused to sign the guaranty. (Taranto SUF ¶ 8.)

On January 20, 2005, API received via fax an executed copy of the personal guaranty.[4] The top of the one-page document read as follows:

Personal Guarantee

In consideration of the extension of credit by Aerospace Products International, Inc. (API, Inc.), hereinafter the Seller, herein to <u>FWF, Inc.,</u> a (<u>X</u>) Corporation . . . located in the state of <u>Colorado</u>, herein the Buyer, the undersigned does jointly and severally personally guaranty to pay and be responsible for payment of all goods, material or services sold by the Seller to the Buyer, including collection charges, finance charges and attorney's fees.

(Second Amd. Compl. Ex. B.) According to Chumney, he was the one who filled in the handwritten information in the underlined portion ("FWF, Inc.," "X," and "Colorado"), and he discussed the guaranty with Taranto on several occasions. (Chumney Dep. 88:10-89:12.)

Towards the bottom of the guaranty, there appeared a

---

[4]The fax header at the top of the guaranty received by API indicated that the document was faxed from Firewall Forward, Inc., the predecessor to FWF. Firewall Forward was an aircraft repair and overhaul business and was the principal tenant in the Colorado hangar building in which Taranto had previously invested. (Taranto Dep. 9:14-16:21.)

-3-

handwritten date "20th day of January, 2005," a handwritten signature above the signature line, Taranto's name and address handprinted below the signature line, and Taranto's social security number handprinted at the very bottom of the document. Taranto testified that he was the one who filled in his handprinted name below his signature. He testified that he did not write in the date that appeared above his name or his address or social security number that appeared below his name.[5] (Taranto Dep. 137:4-23.) Taranto further testified that he did not sign the guaranty, authorize anyone to sign it for him, and did not know who signed the document. (Taranto Dep. 74:17-23; Taranto Aff. ¶¶ 6,7.)

**B. Allegations in Second Amended Complaint**

In Count I of the complaint, API alleges that FWF and Taranto breached their contractual obligations under the credit application and the guaranty, respectively. (Second Amd. Compl. ¶ 20.) API alleges that based on the guaranty, API refrained from instituting collection procedures against FWF on its existing obligations and continued to ship materials to FWF pursuant to the terms and conditions of the credit application. As a result, FWF incurred an unpaid debt of $449,837.00 during this time period. (Id. ¶¶ 8-10.) After API demanded payment of this debt, the defendants allegedly

---

[5]Taranto testified that the social security number that appeared on the guaranty belongs to him, and Chumney testified that he did not know Taranto's social security number. (Taranto Dep. 69:10-18; Chumney Dep. 90:13-23.)

represented to API that a sale of substantially all of the assets of FWF was imminent and that all of FWF's debt to API would be paid from the proceeds of that sale. FWF provided API with a copy of the terms of the purported asset sale agreement. API relied upon these representations and agreed not to seek immediate enforcement of either FWF's obligations under the credit application or Taranto's obligations under the guaranty. (Id. ¶¶ 11-12.) On October 31, 2006, FWF was sold for $600,000, but under terms that were substantially different from those contained in the purported asset sale agreement previously provided to API. Notably, no payment of FWF's obligations to API was provided for in the terms of the actual sale, and no payment was ever made to API from the proceeds of the sale or from any other source. (Id. ¶ 13.)

In Count II, API seeks recovery under a theory of quantum meruit. (Id. ¶ 22.) Moreover, in Count III, API alleges that if the signature that appeared on the guaranty was not signed or authorized by Taranto, then FWF engaged in fraud because it knew or should have known that the guaranty was forged. (Id. ¶ 30.) With respect to Taranto, API claims that "[e]ven if the signature was not that of Taranto, upon information and belief Taranto as chief executive of FWF authorized signature of the Taranto Guaranty on his behalf, and/or ratified and adopted the Taranto Guaranty during the course of FWF's dealings with API thereafter, all of which constituted a fraudulent misrepresentation upon which API

continuously relied to its detriment." (Id. ¶ 31.) Finally, in Count IV, API seeks punitive damages based on FWF's and Taranto's conduct. (Id. ¶¶ 33.)

## II. ANALYSIS

### A. Jurisdiction and Choice of Law

API is a Delaware corporation with its principal place of business in Memphis, Tennessee. FWF is a Nevada corporation with its principal place of business in Loveland, Colorado. Taranto is a citizen of Colorado. Because the amount in controversy exceeds $75,000, the court has diversity jurisdiction under 28 U.S.C. § 1332.

The substantive law governing a diversity action is state rather than federal law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). A federal district court is required to apply the "choice of law" rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); NILAC Int'l Mktg. Group v. Ameritech Svcs., Inc., 62 F.3d 354, 358 (6th Cir. 2004). "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." Klaxton, 313 U.S. at 496. The parties state in their memoranda of law in support of and in opposition to summary judgment that they agree Tennessee law applies to API's claims. Based on the fairly limited record provided by the parties regarding the circumstances surrounding the

negotiations, execution, performance, and alleged breach of the credit application and personal guaranty, the court agrees and will apply the substantive law of Tennessee.

**B.    Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted if the pleadings and evidence on file show that there is no genuine issue as to any material fact. LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993).  The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986).  The moving party can meet this burden by pointing out that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of its case. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts establishing that there is a genuine issue for trial by showing that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The "mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for that evidence. InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in its favor. Id.

**C. Breach of Contract**

The essential elements of a breach of contract claim include "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of contract, and (3) damages caused by the breach of contract." C & W Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676-77 (Tenn Ct. App. 2007) (quoting ARC LifeMed, Inc. V. AMC-Tennessee, Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). A contract "must result from the meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient

consideration, free from fraud or undue influence, not against public policy, and sufficiently definite to be enforced." Higgins v. Oil Chem. and Atomic Workers Int'l Union, 811 S.W.2d 875, 879 (Tenn. 1991).

Taranto argues that he is entitled to summary judgment on API's breach of contract claim because "the undisputed facts show that Taranto did not sign the Personal Guaranty, nor did he authorize or participate in the transmittal of the fraudulent document to Plaintiff." (Mot. for Summ. J. at 6-7; Taranto Dep. 74:17-23; Taranto Aff. ¶¶ 6,7.) Taranto asserts that the signature that appears on the personal guaranty is not his, but instead is a forgery made without his knowledge or consent. (Id.) In addition, Taranto claims that he did not know that API would refuse to continue selling items to FWF without his personal guaranty. (Taranto Dep. 72:4-9, 75:16-25; 79:23-80:10.)

The court finds that API has set forth specific facts showing that there is a genuine issue for trial on the breach of contract claim against Taranto. The personal guaranty has a signature that appears immediately above Taranto's handprinted name, address, and social security number. Chumney testified that he received the draft guaranty from API, filled in the handwritten information in the top portion, and discussed the guaranty with Taranto on several occasions. Although Taranto testified that he did not sign the guaranty or authorize anyone to sign it for him, he testified that

he received the draft guaranty and filled in the handprinted name below his signature.  The social security number that appears on the guaranty belongs to him, and Chumney testified that he did not know Taranto's social security number.  The fax header "Jan-20-05 10:56A Firewall Forward, Inc." that appears on the personal guaranty transmitted to API indicates that the fax was sent from FWF's office in Colorado.

In addition, in viewing the evidence in a light most favorable to API, there is some evidence in the record to support API's contention that Taranto regularly met with Chumney to discuss FWF's operations, including API's requirement of a personal guaranty, and that Taranto more likely than not knew that API would stop selling to FWF on credit if he did not execute the personal guaranty. Thus, whether Taranto signed, authorized, or ratified the guaranty remain disputed questions of material fact.  Therefore, summary judgment on the breach of contract claim is DENIED.

**D.   Quantum Meruit/Unjust Enrichment**

In Count II of the Second Amended Complaint, API asserts that "[t]o allow FWF and Taranto to retain the use of the goods and materials without full payment would unjustly enrich FWF and Taranto and therefore, API is entitled to recovery against FWF and Taranto under a theory of quantum meruit."  (Second Amd. Comp. ¶ 22.)  Thus, this Count seeks recovery under theories of unjust enrichment and quantum meruit.  "It is well settled that the

theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same." M.R. Stokes Co. v. Shular, No. M2006-02659-COA-R3-CV, 2008 WL 544665, at *6 (Feb. 26, 2008) (citing Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 154 (Tenn. 1966)). Unjust enrichment "is a quasi-contractual theory or is a contract implied-in-law where one does not exist." M.R. Stokes Co., 2008 WL 544665 at *6. In Tennessee, "[t]he elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" Freeman Indus., LLC v. Eastman Chemical Co., 172 S.W.3d 512, 525 (Tenn. 2005) (quoting Paschall's, 407 S.W.2d at 155). "The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust." Freeman Indus., 172 S.W.3d at 525.

In order to recover under a theory of quantum meruit, a party must prove (1) there is no existing enforceable contract between the parties covering the same subject matter; (2) the party seeking recovery proves that it provided valuable goods or services; (3) the party to be charged received the goods or services; (4) the circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and (5) the circumstances

demonstrate that it would be unjust for a party to retain the goods or services without payment. Swafford v. Harris, 967 S.W.2d 319, 324 (Tenn. 1998) (citing Castelli v. Lien, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995)).

Taranto argues that he is entitled to summary judgment on this claim because he personally did not receive any of the goods, services, or other benefits that API provided to FWF. However, "to recover for unjust enrichment, a plaintiff need not establish that the defendant received a direct benefit from the plaintiff. Rather, a plaintiff may recover for unjust enrichment against a defendant who receives *any* benefit from the plaintiff if the defendant's retention of the benefit would be unjust." Freeman Indus., 172 S.W.3d at 525 (emphasis in original). Viewing the evidence in a light most favorable to API, Taranto received from API the benefit of allowing his company to purchase goods on credit instead of C.O.D., and a result, placing FWF in a position to be sold. Taranto also contends that he did not know or have reason to know that API only continued to supply materials to FWF on credit because of the personal guaranty. Again, as discussed above in the breach of contract section, there is some evidence in the record to support API's contention that Taranto regularly met with Chumney to discuss FWF's operations and that Taranto more likely than not knew that API would stop selling to FWF on credit if he did not execute the personal guaranty. Therefore, the motion for summary judgment

is DENIED as it relates to API's unjust enrichment claim.

**E. Fraud**

Taranto moves for summary judgment on API's fraud claim on the grounds that API lacks evidence that Taranto made any misrepresentation to API or intentionally sought to deceive API, or that he provided API with information recklessly or with a careless disregard for the truth. Under Tennessee law, the elements of fraud include

> an intentional misrepresentation with regard to a material fact; knowledge of the representation's falsity, i.e., it was made "knowingly" or "without belief in its truth" or "recklessly" without regard to its truth or falsity; the plaintiff reasonably relied on the misrepresentation and suffered damages; and the misrepresentation relates to an existing or past fact.

Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n, 835 S.W.3d 25, 29 (Tenn. Ct. App. 1992) (citing Stacks v. Saunders, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)).

In its response in opposition to the summary judgment motion, API merely states that "[t]he fraud claim against the Defendant is simple. If it is true that Taranto did not sign the Personal Guaranty, then API was unarguably sent a false signature without API's knowledge, and API would not have extended credit or incurred the damages it seek to recover in this action." (Pla.'s Resp. at 11). However, while this may support a fraud claim against FWF, the court does not see how this would support such a claim against Taranto. In other words, either Taranto signed the personal

-13-

guaranty, in which case he would now be in breach of the agreement, or he did not sign the guaranty, in which case there would be no fraudulent misrepresentation. While it appears from the complaint that API alleges that the defendants made misrepresentations to API to prevent API from seeking to collect on the outstanding debt and in connection with the sale of FWF, API has neither made that argument in its opposition brief nor cited to any portions of the record to support such an argument. API has not presented "concrete evidence supporting its claims," see Cloverdale Equip., 869 F.2d at 937, and the court does not have the duty to search the record for that evidence. See InterRoyal Corp., 889 F.2d at 110-11. Therefore, Taranto's summary judgment motion is GRANTED with respect to the fraud claim.

**F. Punitive Damages**

Finally, Taranto seeks summary judgment on API's claim for punitive damages. "Punitive damages may be awarded to punish a defendant for wilful wrongful conduct and to deter others from engaging in similar conduct." Goodale v. Langenberg, 243 S.W.3d 575, 585 (Tenn. Ct. App. 2007). As a general rule, punitive damages are not proper in breach of contract cases. Mohr v. Daimlerchrysler Corp., No. W2006-0138-COA-R3-CV, 2008 WL 4613584, at *15 (Tenn. Ct. App. Oct. 14, 2008). There are exceptions, however, in cases involving fraud, malice, gross negligence, or oppression, or in similar cases which involve wilful misconduct and

-14-

which relate to the nature of the defendant's actions in inflicting or causing the injury rather than to the extent of the injury that results. Id. (citing Bryson v. Bramlett, 321 S.W.2d 555 (1958)); Goodale, 243 S.W.3d at 585. Here, given the numerous disputes of material facts surrounding the credit application and personal guaranty, including Taranto's conduct, the court cannot conclude at this time that Taranto is entitled to summary judgment on the punitive damages claim. Thus, the motion is DENIED with respect to the punitive damages claim.

### III. CONCLUSION

For the reasons above, Taranto's motion for summary judgment is GRANTED in part and DENIED in part.[6]

IT IS SO ORDERED.

s/ Tu M. Pham<br>
TU M. PHAM<br>
United States Magistrate Judge

March 31, 2009<br>
Date

---

[6]Taranto references in footnote 1 of his motion for summary judgment his motion to dismiss for lack of personal jurisdiction, which he had previously filed and which the court had denied without prejudice. The court does not address the arguments contained in Taranto's prior motion to dismiss in the instant order, as Taranto has not renewed his motion challenging personal jurisdiction.

-15-